(No. 22199.— ▉▉▉▉▉▉▉▉▉)

PAT MURPHY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE CITY OF HERRIN, Plaintiff in Error.)

*Opinion filed February 23, 1934.*

W. C. ROPIEQUET, (ROPIEQUET & FREELS, of counsel,) for plaintiff in error.

E. N. BOWEN, and STONE & FOWLER, for defendant in error.

Mr. JUSTICE STONE delivered the opinion of the court:

Pat Murphy, while discharging the duties of policeman in the city of Herrin, was shot in the hand. He made application for compensation under the Workmen's Compensation act. The arbitrator, on hearing, found that Murphy was not entitled to compensation, for the reason that he was an officer and not an employee of the city of Herrin. On review this finding was confirmed by the commission. On *certiorari* to the circuit court of Williamson county the finding of the commission was set aside and the court on examination of the evidence in the case entered an award.

There are two questions in the case. The first is whether Murphy was an officer or an employee of the city of Herrin. It is conceded that if he was an officer the Workmen's Compensation act does not apply. The second question is whether the award for twenty-five per cent loss of use of the hand is supported by the evidence.

The rule well settled in this State is that before one acting in the capacity of a policeman can be said to be an officer of the city there must have been adopted an ordinance of that city or village creating the office of policeman as such. The office of policeman, police patrolman or assistant chief of police was unknown at common law and such office can be created only by statute or municipal ordinance. (*Stott* v. *City of Chicago,* 205 Ill. 281.) The statute governing cities and villages expressly provides for the office of mayor, city council, city clerk and city treasurer. (Smith's Stat. 1933, chap. 24, art. 6, sec. 1, p. 353.) The second section of article 6 of that act provides: "The city council may, in its discretion, from time to time, by ordinance passed by a vote of two-thirds of all the aldermen elected, provide for the election by the legal voters of the city, or the appointment by the mayor, with the approval of the city council, of a city collector, a city marshal, a city superintendent of streets, a corporation counsel, a city comptroller, or any or either of them, and such other

officers as may by said council be deemed necessary or expedient." The city council may by a like vote, by ordinance or resolution to take effect at the end of the fiscal year, discontinue any office so created and devolve the duties thereof on any other city officer. The office of policeman or police patrolman is to be included under the designation "such other officers as may by said council be deemed necessary or expedient." In the construction of this section this court has held that an office not among those enumerated in the statute must be created by an ordinance of the city. (*City of Metropolis* v. *Industrial Com.* 339 Ill. 141; *Johnson* v. *Industrial Com.* 326 id. 553; *Moon* v. *Mayor,* 214 id. 40; *People* v. *City of Chicago,* 210 id. 479; *Stott* v. *City of Chicago, supra.*) Authorizing appointment of such officers, alone, is not sufficient. *Stott* v. *City of Chicago, supra.*

Counsel for plaintiff in error say that the city council of the city of Herrin did adopt such an ordinance. In support of that contention they put in the record, by stipulation, section 77 of the revised ordinances of that city, which reads as follows: "The mayor shall, with the advice and consent of the city council, appoint for the term of one year, and until their respective successors in office are appointed and qualified, additional police officers in such number as said mayor and city council may deem expedient, to assist the chief of police in his official duties. They shall possess the same qualifications, take the same oath and give the same bond as the chief of police of said city." That section does not purport to create the office of policeman or assistant chief of police. The provision that the mayor shall appoint additional police officers cannot be construed as an ordinance to create the office of policeman. *Stott* v. *City of Chicago, supra.*

So far as the record here shows, there was no ordinance in effect in the city of Herrin creating the office of policeman or police patrolman at the time Murphy was

injured, and he could not, therefore, be an officer *de jure.* (*Johnson* v. *Industrial Com. supra; Moon* v. *Mayor, supra.*) If no office is created as required by the statute, then there can be no such officer either *de jure* or *de facto,* for there is no office to occupy. (*City of Metropolis* v. *Industrial Com. supra; Johnson* v. *Industrial Com. supra; Bullis* v. *City of Chicago,* 235 Ill. 472; *Howard* v. *Burke,* 248 id. 224.) We are of the opinion therefore that Murphy was not an officer of the city of Herrin as contemplated by the Workmen's Compensation act.

The second contention concerns the amount of the award, which, as we have stated, was for twenty-five per cent permanent loss of use of the right hand. Concerning the injury Murphy testified that before he was shot his hand was strong and well; that since the injury he cannot use a revolver, as he cannot pull the trigger; that the injury interferes with holding the fire-arm in his right hand, and that he cannot use the hand as he could before; that there is interference with the movement of his right hand and ability to close the fingers as the result of the injury. It appears that the bullet did not pierce or injure the bones of the hand but the wound extended from the wrist toward the fingers in a V-shape, tearing the skin over the dorsum of the right hand. Dr. R. J. Hyslop, who testified for defendant in error, described the laceration. He testified that the wound had been closed when he saw it; that in his opinion it had extended deep enough to involve the extensor tendon of the proximal phalanx of the first and second fingers; that there was a partial, but not complete, separation of that tendon; that at the last time he examined Murphy the extension of the proximal phalanx of the first and second fingers, due to laceration of the extensor tendon, was limited, and that such condition was permanent. He testified, however, that there was complete use of all of the fingers in flexion, though extension of the proximal phalanx of the first and second fingers was lim-

ited. He also stated that in his opinion this limitation would not in any way interfere with the use of the hand in gripping, and in his opinion there was no reason why Murphy's condition should prevent his flexing fully the index finger in the act of pulling the trigger of a revolver; that he had sustained no loss of power to contract the hand; that he did not have full extension of his fingers, and that whether this would affect the use of a revolver would depend on the amount of motion necessary to get hold of the fire-arm. Dr. R. L. Kane, also called by defendant in error, testified that he dressed the wound and examined the injury; that he noticed no tear of the tendon, and that in suturing the wound he used about eight skin-clips. He also testified to lack of complete extension of the first two fingers of the right hand. This was the evidence in the case other than that relating to the city ordinances.

That defendant in error suffered a permanent injury is shown by the evidence. The extent of that injury to his hand is not shown. Defendant in error has scar tissue on his hand which will remain, and it is evident that his inability to completely extend his fingers in the natural way is likewise permanent. He testifies that he is unable to grasp a revolver and pull the trigger. The medical testimony offered on his behalf, however, does not bear out that condition but is, in effect, just the contrary. While any finding of a per cent of use lost must to a certain extent be an estimate, and so this court will not disturb such finding where there is substantial basis for it in the evidence, yet there must be evidence on which such finding can be based, and where such finding is clearly contrary to the manifest weight of the testimony it will be set aside. We are of the opinion that the evidence does not afford a basis for a finding of twenty-five per cent permanent loss of use of the right hand.

The award for necessary first aid, surgical and hospital services, amounting to $43, was correct, as was the award

for the sum of $15 per week for the period of five and one-seventh weeks covering the period of temporary total disability, and to that extent the finding of the circuit court was right. The finding of twenty-five per cent permanent loss of use of the hand, however, is erroneous.

The judgment is reversed and the cause is remanded to the circuit court, with directions to remand it to the Industrial Commission to hear further evidence on the extent of the loss of use of defendant in error's right hand, and to enter an award in accordance therewith in addition to that for hospital and medical care and temporary total disability as herein approved.

*Reversed and remanded, with directions.*